IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

JAMES DAVID DEMENT                   §

v.                                   §            CIVIL ACTION NO. 9:07cv72

DIRECTOR, TDCJ-CID                   §

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Petitioner James Dement, proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. §2254 complaining of the legality of the failure to release him on parole. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c).

In his petition, Dement says that he was convicted of aggravated sexual assault on October 17, 1996, receiving a sentence of 12 years in prison.  He states that on August 29, 2005, he was granted parole by a vote of the Board of Pardons and Paroles.  However, shortly thereafter, the Board withdrew this vote and designated him as a "serve-all," denying him release on parole.  According to the Board, new information was received that he was classified as a G-4 medium custody offender, even though Dement says that the Board knew that he was in that classification when he was granted parole, so it was in fact not new information at all.  Dement explains that because he was classified in this custody status, he was ineligible to participate in a treatment program ordered by the Board.

Dement argues that once parole is granted, it gives rise to a protected liberty interest, which cannot be summarily revoked without a hearing.  He says that he did not receive a new disciplinary case resulting in a change of his status, but that under TDCJ policy, all inmates entering into the system with an escape on their record must remain classified in G-4 medium custody status for ten

1

years.  Because he had an escape on his record, Dement says, his ten years did not expire until April of 2006, at which time he applied to the Board for special review, which was denied.

Next, Dement says that he received ineffective assistance of counsel in that his retained parole attorney, James Smith, failed to determine that Dement was a G-4 offender and thus ineligible to participate in the proposed program.  Furthermore, Dement says, after the vote was changed, counsel abandoned him and refused to intercede in his behalf and ensure that he was provided with due process, where he would have received a hearing to offer "mitigating circumstantial evidence" to show that he was not at fault and had done nothing to destroy the vested interest granted to him by the Board.  Dement says that counsel did not seek a special review or anything else.

Finally, Dement says, he has been denied equal protection under the law because the Board failed to give him proper notice and a forum in which to be heard.  He reiterates that the affirmative parole vote created a vested liberty interest in being released.  Dement also says that the Board's actions violated his rights under the Texas Constitution.

In a brief in support of his petition, Dement says that he and his family paid Smith some $5,000.00 to represent him before the Board.  Smith prepared a parole package and participated in an interview with a parole commissioner, and successfully convinced the parole panel to give Dement a positive vote.

Dement says that he was aware that this particular vote would not result in his immediate release from prison, but only after he completed a rehabilitation program.  He says that he was in medium custody at this time because of his escape history, and would remain so until around March of 2006.  After the vote, in August of 2005, Dement says that he was awaiting transfer to the rehabilitation program when he was called to the unit parole officer, where he met with Ms. Primrose, the Institutional Parole Officer.  Primrose informed him that because he was a G-4 offender, he was not eligible to participate in any TDCJ rehabilitation-tier program, which the Board had voted for him to attend.  Dement says that he "voiced his disillusion" with this statement and

wrote to Smith to tell him of the new development, asking if Smith should intervene with TDCJ to get him promoted from G-4 to G-2.

Shortly after he wrote the letter, Dement says, he was called to Primrose's office and given a paper entitled "Notice of Board Action."  This notice said, in part, "new information - G4 custody - serve-all."  However, Dement received a letter from Smith dated September 18, 2005, sating that he had contacted the TDCJ release department and had been told that there was nothing in the computer which would prevent him from taking the rehabilitation course, and that he would be released on the date that the Board instructed them to release him.  Dement again contacted Smith, who wrote him a letter on October 27, 2005.  This letter said that Smith had called the Board and that Dement had not been refused parole because of his custody status, but because he was not eligible for an 18-month program; the parole board member who voted for his release was not willing to release him unless Dement went through the 18-month sex offender program.

Dement contends that saying that he was not denied release because of his custody status was simply a "play on words," because it was his custody status which made him ineligible for the rehabilitation program.  After this letter, he says, Smith "stonewalled" all attempted to contact him, and so he, Dement, took it upon himself to request a special review, in light of the fact that the evidence cited by the Board as "new information" was not new at all.  His request for special review was denied.

Dement says that the crux of his complaint centers around the fact that the Board voted to release him to parole and then changed his mind without his doing anything to precipitate such action, and arbitrarily denied him the right to be heard.  He says that his release on parole was no longer "speculative" after the Board had voted, albeit conditionally, to release him to parole; Dement maintains that this created a "vested liberty interest" which could not be abrogated without due process.

The Respondent has been ordered to answer the petition and has done so.  In his answer, the Respondent says first that certain exhibits attached to Dement's petition were not presented to the

Texas state courts, and so these exhibits should be dismissed.  These exhibits, identified as Exhibits A, C-I, and N, consist of TDCJ records and correspondent with Smith.  The Respondent says that only Exhibit B was included with his state petition, but that the State's response includes Exhibits A, J-M, and O.

After discussing the standards of review applicable under the Anti-Terrorism and Effective Death Penalty Act of 1996, the Respondent goes on to say that Dement's due process claim is without merit because he was never actually released, and so no liberty interest ever vested.  The Respondent says that there is no constitutional entitlement to release on parole in the State of Texas, and argues that the Board was within its discretion to withdraw its approval before Dement was released.

Next, the Respondent says that because there was no protected liberty interest in release on parole, Dement's equal protection claim fails as well.  The Respondent points to Hilliard v. Board of Pardons and Paroles, 759 F.2d 1190, 1193 (5th Cir. 1985), in which the Fifth Circuit rejected a claim that the Board's reliance on "invalid disciplinary actions" to deny parole violated the Equal Protection Clause; the Fifth Circuit explained that this claim was in essence a due process claim and was not actionable because the petitioner had no constitutional expectancy of release on parole.

Dement further says that he has been denied equal protection in that he has not been afforded the same treatment as other offenders, who were granted parole, because "those other offenders cannot have that vested liberty interest arbitrarily abrogated without the benefit of notice and the opportunity to be heard."  However, the Respondent says, Dement was never granted parole, and he does not claim that he has been treated differently from other inmates for whom an initial vote to release on parole was later withdrawn before parole was granted.

Third, the Respondent says that to the extent that Dement complains of violations of the Texas Constitution, his claims are without merit because violations of state law do not provide a basis for federal habeas corpus relief.  Finally, the Respondent says that Dement's claim of

ineffective assistance of counsel is without merit because he does not have a constitutional right to assistance of counsel in parole revocation proceedings.

In his response to the answer, Dement reiterates that his file was reviewed before the vote to release was held, and so the fact that he was in G-4 custody status was known at the time of the vote.  Even if the parole panel did not know or were not aware of this, he says, this mistake is not attributable to any action by him, and he should have been accorded due process in not having his parole taken away without the opportunity to be heard.

Dement argues that once the Board voted to release him to parole, an expectation was created for him to believe that he would be released; before this vote was taken, no such expectation existed. Dement says that under Texas law, a parole panel may grant, deny, or revoke parole; once the panel exercises its discretion to grant parole, however a liberty interest attaches and can only be taken by the exercise of due process.

Dement goes on to take issue with the Respondent's exhaustion argument, saying that his actual petition itself does not reference any of the exhibits to which the Respondent refers.  He says that exhibits A, C-1, and N were either presented in state court by himself, or were part of Smith's affidavit in state court, and were therefore exhausted.[1]

Turning to his due process argument, Dement contends that Texas law does not guarantee a right to release on parole, but that when the Board voted for him to be released on parole, the State created a right for him to be released on parole, as long as he complied with the rules and regulations until arrangements for his release could be accomplished.  He stated that he complied with all rules and regulations, and his parole could have been revoked for misconduct on his part, but it was not. Nor was it revoked because of a miscalculation of time.  Contrary to what the Respondent says, Dement asserts that he is not complaining of being "denied parole," but rather that he was "granted parole" and then it was taken away from him without due process.  Finally, Dement says that he is

---

[1]The Respondent's answer appears to refer to exhibits A, C through L, and N as being unexhausted, but Dement apparently read this as A, C-one, and N.

entitled to an evidentiary hearing, because the state habeas corpus failed to make findings of fact or conclusions of la and thereby denied him meaningful review in the state habeas forum.

Legal Standards and Analysis

The Fifth Circuit has held that there is no right to be released on parole in the State of Texas. Creel v. Keene, 928 F.2d 707, 708-09 (5th Cir. 1991); *see also* Allison v. Kyle, 66 F.3d 71, 74 (5th Cir. 1995).  In Creel, the appellant James Creel first became eligible for parole in 1981, and was denied parole fourteen times after that.  In April of 1990, the Board gave him a tentative parole month of July 1990, but less than a month later, on May 10, 1990, the Board notified Creel that he would not be released in July, because it had obtained "additional information" that releasing Creel would "increase the likelihood of public harm." Creel argued that the 1987 amendments to the Texas parole law conferred a liberty interest in release on parole, but the Fifth Circuit rejected his contention and dismissed his claim.

Similarly, there is no doubt that once released to parole, inmates have a limited liberty interest in remaining free on such status, giving rise to a certain level of procedural due process to which persons facing parole revocation are entitled.  Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593 (1972); *see also* Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973).  As a general rule, due process in a parole revocation hearing requires: notice of the charges; an opportunity to appear, present evidence, and confront witnesses; an independent decisionmaker; and a written statement of reasons and findings.  Gagnon, 411 U.S. at 786; Morrissey, 408 U.S. at 489.  The parolee must have an opportunity to show, if he can, that he did not violate the parole conditions or that, if he did, that the circumstances in mitigation suggest that the violation does not warrant revocation.  Morrissey, 408 U.S. at 488.

In this case, Dement had been approved for parole by a favorable vote from the parole panel, but had not actually been released.  He argues that this favorable approval vote, by itself, was sufficient to entitle him to the due process protections accorded to parolees, and so the approval vote could not be withdrawn without the due process protections set out in Morrissey and Gagnon.  He

6

says that his release on parole was no longer speculative, but that he had a vested liberty interest in release on parole, although he acknowledges that this parole release was conditional.

The records furnished by Dement show that he received an FI-18R release vote.  According to 37 Tex. Admin. Code §145.12, an FI-18R is a determination that the totality of the circumstances favor the offender's release, and further investigation is ordered; specifically, the offender is to be transferred to a TDCJ rehabilitation treatment program, and released to parole only after program completion and no earlier than 18 months from the specified date; such program may include the sex offender treatment program.

This language of the Administrative Code makes clear that Dement did not have a protected liberty interest in gaining release on parole as a result of the initial vote.  Instead, his release on parole was still conditional, in that it was conditioned upon the successful completion of an 18-month treatment program.  The Fifth Circuit has explained that it is "entirely speculative" whether an inmate will actually obtain parole in the State of Texas, and so there is no constitutional expectancy and thus no liberty interest in parole.  *See* Malchi v. Thaler, 211 F.3d 953, 957 (5th Cir. 2000).  Here, the favorable vote meant Dement could be released to parole *only if* he successfully completed the rehabilitation treatment program.  Consequently, any liberty interest which may exist could not arise before the program was completed; whether or not he would in fact complete the program was still speculative as of the time that the parole panel rescinded the prior vote.  Dement's contention that the FI-18R vote gave him a protected liberty interest in release on parole is incorrect, and so all of his claims which revolve around this assertion are without merit, including his due process and equal protection claims.

The Fifth Circuit has held that because inmates have no liberty interest in obtaining parole in Texas, they cannot bring lawsuits complaining of the constitutionality of procedural devices attendant to parole decisions.  Allison, 66 F.3d at 74, *citing* Sandin v. Conner, 115 S.Ct. 2293, 2300 (1995).  The Court has further explained that there are no procedural due process protections for procedures unrelated to protected liberty interests, specifically including parole procedures.  Johnson

7

v. Rodriguez, 110 F.3d 299, 308-09 and n. 13.  In Johnson, the Fifth Circuit expressly stated that because Texas prisoners have no protected liberty interest in parole, they cannot mount a challenge against any state parole review procedure on procedural or substantive grounds.  Johnson, 110 F.3d at 308.  This includes Dement's challenge to the withdrawal of a favorable vote, which withdrawal was done at a point in time before any protected liberty interest had vested, as well as his claim that he was denied equal protection.

In addition, Dement's equal protection challenge fails because there has been no showing that persons similarly situated to himself received preferential treatment based on a suspect classification.  See Frontiero v. Richardson, 411 U.S. 677, 683 (1973); Hill v. Estelle, 537 F.2d 214 (5th Cir. 1976).  Dement has neither alleged nor shown that other inmates who received a favorable parole vote, which was rescinded prior to completion of a condition precedent to release on parole, were granted any sort of due process with regard to the rescission.  See, e.g., Ex Parte Carter, --- S.W.3d ---, slip op. no. AP-75193 (Tex.Crim.App., Nov. 16, 2005) (unpublished).  In Carter, the applicant Michael Carter was voted for release for mandatory supervision, but then prison officials concluded that he was not eligible for such release and the Parole Board withdrew the prior vote.  The Court of Criminal Appeals noted in dicta that Carter "was provided with no hearing or opportunity to respond" before the second vote.  This Court has found no Texas case in which inmates who received a favorable vote which was later rescinded were allowed a hearing or opportunity to respond before the rescission; Dement has failed to show that other inmates in this situation were allowed such an opportunity while he was not.  His equal protection claim therefore fails on this basis as well.

Finally, Dement asserts that he received ineffective assistance of counsel during the proceedings in which he was granted parole, which was later rescinded, as well as the state habeas corpus proceedings.  These claims do not form a basis for federal habeas corpus relief.  The Fifth Circuit has held that the incompetence or ineffectiveness of counsel during federal or state collateral post-conviction proceedings is not a ground for habeas corpus relief.  Graves v. Cockrell, 351 F.3d

143, 156 (5th Cir. 2003).  The parole proceedings were not part of a criminal prosecution, but represented Dement's attempts to secure release on parole, and the constitutional right of assistance of counsel applies only in criminal prosecutions.  Amendment VI, United States Constitution; *see also* United States v. Gouveia, 467 U.S. 180, 187 (1984) *and* Baxter v. Palmigiano, 425 U.S. 308, 315 (1976).  Because Dement had no constitutional right to the assistance of counsel during these proceedings, he necessarily had no constitutional right to effective assistance of counsel.  *See* Bostic v. Carlson, 884 F.2d 1267, 1274 (9th Cir. 1989) (citing Baxter); *cf.* Coleman v. Thompson, 501 U.S. 722, 756, 111 S.Ct. 2546, 2568 (1991) (where inmate not entitled to counsel in collateral proceeding, there is no guarantee of effective counsel).  Dement's claims are without merit.

Conclusion

An application for the writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim resulted in a decision which was contrary to or involved an unreasonable interpretation of clearly established federal law, as set out by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. §2254(d).

The Court has carefully examined the habeas corpus application filed by the Petitioner James David Dement, as well as the answer filed by the Respondent, the Petitioner's response thereto, the state records, and all other documents and records in the case.  Upon such consideration, the Court has determined that the Petitioner has failed to show that he is entitled to the issuance of a writ of habeas corpus or to the relief sought in his application for such writ.  Absent a showing that the petitioner is in custody in violation of the Constitution, laws, or treaties of the United States, the relief sought cannot be granted.  28 U.S.C. §2241(c)(3).  It is accordingly

ORDERED that the above-styled application for the writ of habeas corpus be and hereby is DISMISSED with prejudice.  It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **6**    day of  **August, 2007.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE